COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Frank and Clements


KWANDWO ADU-GYAMFI

MEMORANDUM OPINION*
v.    Record No. 0382-01-4                      PER CURIAM
                                              JUNE 26, 2001

AUTOSTRADE INTERNATIONAL and
 PACIFIC INDEMNITY COMPANY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (John E. Carter, on brief), for appellant.

            (Robert C. Baker; Mell, Brownell & Baker, on
            brief), for appellees.

     Kwandwo Adu-Gyamfi (claimant) contends that the Workers'

Compensation Commission erred in finding that he failed to prove

his cervical condition and surgery were causally related to his

February 11, 1998 compensable injury by accident.  Upon

reviewing the record and the briefs of the parties, we conclude

that this appeal is without merit.  Accordingly, we summarily

affirm the commission's decision.  See Rule 5A:27.

     On appeal, we view the evidence in the light most favorable

to the prevailing party below.  See R.G. Moore Bldg. Corp. v.

Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

Unless we can say as a matter of law that claimant's evidence

sustained his burden of proof, the commission's findings are

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

binding and conclusive upon us.  See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

So viewed, the evidence proved that claimant sustained compensable injuries to his teeth and eye when he slipped and fell while working for employer as a tollbooth operator.  Since 1997, Dr. Sarah Fletcher had treated claimant for neck and left arm pain and numbness/tingling.  A January 28, 1998 cervical spine MRI showed severe spondylosis with severe spinal stenosis at C6-7.  As a result, Dr. Fletcher referred claimant to Dr. James W. Melisi, an orthopedic surgeon.

On February 11, 1998, several hours before the compensable accident, Dr. Melisi examined claimant, who gave a history of neck and left arm pain and numbness of a three-month duration. After this examination and reviewing the MRI, Dr. Melisi recommended that claimant undergo a two-level anterior cervical disketomy at C5-6 and C6-7 with bone graft fusion.  Dr. Melisi noted that claimant "agreed to proceed with surgery.  We will go ahead and schedule him for surgery at his convenience." Claimant testified that he agreed to undergo the surgery, but wanted to postpone it until after a scheduled trip to Ghana. Dr. Melisi agreed to schedule the surgery around the trip.

Several hours after seeing Dr. Melisi on February 11, 1998, claimant slipped and fell at work.  Claimant testified that the fall rendered him unconscious and paralyzed for four to five hours.  Claimant was transported to the emergency room.  The

- 2 -

emergency room report reflects that claimant was conscious and that he denied losing consciousness. It also reflects that claimant stated he was unable to move for about twenty minutes after the accident. An x-ray report showed degenerative spondylosis with disk space narrowing at C4-5, C5-6, with osteophytes and bilateral neural foraminal encroachment.

On February 20, 1998, Dr. Melisi performed the surgery he had proposed to claimant on February 11, 1998 before the accident, an anterior cervical diskectomy at C5-6 and C6-7 with bone fusion graft. The surgery relieved claimant's severe pain and left arm numbness. Claimant continued to treat with Dr. Melisi for the next three months. On April 22, 1998, Dr. Melisi noted that he scheduled claimant for three weeks of physical therapy "and otherwise discharged him from the office."

On May 25, 1999, Dr. John P. McConnell, an orthopedic surgeon, examined claimant and reviewed the medical records, except the x-rays and MRI scans. Dr. McConnell noted claimant's pre-existing significant cervical spondylosis, but concluded that the fall "clearly represents an aggravation of [his pre-existing] condition." Dr. McConnell opined that claimant could not return to his pre-injury employment at that time.

On October 21, 1999, Dr. Joseph Linehan, an orthopedic surgeon, performed an independent medical examination of claimant. Dr. Linehan noted as follows:

It is apparent from the records provided, the history and physical examination today that Mr. Adu-Gyamfi had cervical spondylosis with cervical disc disease and a cervical radiculopathy for which surgery had been recommended. When he slipped and fell on 2/11/98 after visiting his neurosurgeon, his symptoms were worse and surgery was moved up and performed earlier than had originally been planned. However, in my opinion, the surgery performed was not affected by the injury of 2/11/98 nor has the outcome of the surgery in any way, shape or form been altered by that incident.

On December 9, 1999, Dr. Linehan wrote as follows:

I have today reviewed the MRI scan of Mr. Adu-Gyamfi's cervical spine, which was performed on 1/29/98, 13 days before his slip and fall injury of 2/11/98. The MRI scan shows a herniated cervical disc at C5-6 and C6-7. This in no way changes my opinion in my report of 10/21/99. I reiterate the fact that the man had cervical spondylosis, cervical disc disease and a cervical radiculopathy which needed surgery well documented before the slip and fall incident of 2/11/98. The incident of 2/11/98 in no way changed the necessity for his surgery nor did it change the surgery he underwent, nor did it alter the outcome from the surgery performed.

On June 15, 1998 and January 8, 1999, Dr. Bernard Rawlins, an orthopedic surgeon, treated claimant. In his October 29, 1999 deposition, Dr. Rawlins opined that the February 11, 1998 fall "exasperated [claimant's] neck symptoms to the point of becoming emergent requiring his neurosurgeon to perform surgery sooner rather than later . . . ." On cross-examination, Dr. Rawlins admitted that he had not reviewed the complete medical records, x-rays, or MRI scans. Dr. Rawlins testified that

- 4 -

claimant told him he was rendered unconscious due to the fall, but the emergency room report indicates that claimant denied loss of consciousness. Dr. Rawlins based his opinions on the increase in claimant's symptoms and his report that he was paralyzed for a brief period of time.

In ruling that claimant's cervical condition and surgery were not caused by the February 11, 1998 injury by accident, the commission made the following findings:

> While it is clear that the February 11, 1998, fall caused an increase in the claimant's symptoms, there is no evidence that the claimant suffered a sudden mechanical change in his body as a result of the fall. X-rays and MRI scans taken both before and after the injury are essentially the same. The only symptom that the claimant claims to have experienced after the fall that he had not had prior to the fall—temporary paralysis—was fleeting and fully resolved before the claimant arrived at the hospital. . . . While the claimant's symptoms caused his surgery to by [sic] scheduled sooner than originally planned, the February 20, 1998, surgery was exactly the same surgery Dr. Melisi recommended a few hours before the work-related injury.

The commission's findings are amply supported by the record. Moreover, as fact finder, the commission was entitled to reject the opinions of Drs. McConnell and Rawlins, finding that Dr. McConnell offered no explanation as to how or why he concluded that the February 1998 fall aggravated claimant's pre-existing problems and Dr. Rawlins failed to identify any physical change in claimant's condition after the accident, only

a subjective increase in symptomatology. On the other hand, the commission was entitled to accept Dr. Linehan's opinions, which were supported by objective data. "Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). Furthermore, "[q]uestions raised by conflicting medical opinions must be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).

Based upon the commission's factual findings and Dr. Linehan's opinions, we cannot find as a matter of law that claimant's evidence proved that his pre-existing cervical condition was aggravated or exacerbated by the February 11, 1998 compensable injury by accident, resulting in his surgery and subsequent disability.

For these reasons, we affirm the commission's decision.

Affirmed.